**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

————————————————————— :
                                              :
JUANITA SUZANNE HAILSTALK,                    :
                                              :          Civil Action No.
              Plaintiff,                      :          07-5195 (NLH)
                                              :
        v.                                    :          **OPINION**
                                              :
ANTIQUE AUTO CLASSIC CAR                      :
STORAGE, LLC, LEE HUDSON, II,                 :
and JOSEPH FORD,                              :
                                              :
              Defendants.                     :
————————————————————— :

**APPEARANCES:**
JEREMY M. CERUTTI
KARPF, KARPF & VIRANT, ESQS.
3070 BRISTOL PIKE
BUILDING 1, SUITE 102
BENSALEM, PA 19020
*Attorney for Plaintiff*

DOUGLAS DIAZ
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033-0968
*Attorneys for Defendants*

**HILLMAN, District Judge**

        Before the Court is a motion to dismiss plaintiff's amended
complaint filed by defendants Antique Auto Classic Car Storage,
LLC, Lee Hudson, II, and Joseph Ford.  Defendants also filed a
motion seeking to strike plaintiff's sur-reply.  For the reasons
expressed below, defendants' motion to dismiss, as converted to a
motion for summary judgment, is denied, and its motion to strike
plaintiff's sur-reply is granted.

## I.   JURISDICTION

Plaintiff has alleged that defendants violated the Federal Fair Labor Standards Act, and therefore this Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

## II.   BACKGROUND

Plaintiff Juanita Hailstalk alleges that defendants violated the Federal Fair Labor Standards Act, the New Jersey Wage and Hour Law and the New Jersey Wage Payment Act.  Hailstalk asserts that defendants owe her more than $12,000.00 in wages and overtime pay.

Hailstalk states that she was hired by defendants in August of 2004 as a resident manager.  She states that she worked seven days a week and was responsible for defendants' customers on a 24-hour basis.  Hailstalk alleges that from October 2004 through June 2005, she earned $400.00 every two weeks, which was raised to approximately $500.00 every two weeks in June 2005, and by October 2006, she was earning approximately $580.00 every two weeks.  She also states that although she worked overtime, including overnights and on weekends, she has not been properly compensated by defendants for her regular work hours or for the overtime she worked from the period of October 2004 through June 2006.

Before filing a complaint in this Court, on February 20,

2

2006, Hailstalk filed a claim with the New Jersey Department of Labor and Workforce Development ("NJLWD") requesting an investigation into defendants' alleged failure to pay her the full amount of wages due.[1]  In her claim with the NJLWD, Hailstalk was represented by Jeffrey Dragon, Esq.  During the pendency of the NJLWD claim, counsel for the parties discussed settlement and a proposed settlement agreement was provided to Ms. Hailstalk.  She states, however, that she rejected the settlement agreement sent to Mr. Dragon from defendants. Hailstalk also states that she neither consented to settlement nor authorized Mr. Dragon to settle the matter on her behalf and that she refused to sign the proposed settlement agreement.

Defendants argue that the parties agreed to settle the

---

[1]  The Court notes that the copy of Hailstalk's claim form that was attached as Exhibit A to defendants' brief included her address and social security number.  Counsel for defendants is cautioned to follow Local Rule 5.2(18) regarding sensitive information, which states,

> If sensitive information must be included, the following personal data identifiers must be partially redacted from the document, whether it is filed traditionally or electronically:
> (1)  the last four digits of the social security number and tax identification number;
> ...
> (5)  home address to city and state.

Counsel should substitute and re-file a redacted exhibit that protects Hailstalk's sensitive information.  In the future, counsel should file all exhibits in compliance with Local Rule 5.2(18).  Failure to do so may result in the imposition of sanctions.

matter, and that defendants' counsel sent a letter dated November 28, 2006, to Mr. Dragon, who was representing Hailstalk at that time, confirming that the matter was settled and that a formal agreement would be forthcoming.  Defendants admit that Hailstalk never signed a formal agreement.  In addition, on April 2, 2007, Hailstalk was sent a letter from the NJLWD stating that it had received Hailstalk's correspondence regarding her claim against defendants and that their file had been marked settled and the matter closed.  The NJLWD also informed her that since the matter settled, and since a settlement is not an admission of guilt on the party of the employer, that neither party could appeal and the decision was final.  The NJLWD also advised her that if she was dissatisfied with the outcome, she could contact another attorney about other administrative remedies or court action.

## III.  **DISCUSSION**

Defendants have moved to dismiss plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that because of the prior proceedings before the NJLWD, this Court lacks jurisdiction based on the Rooker-Feldman doctrine, and that all of plaintiff's claims are barred by the doctrine of claim preclusion.[2]  Because this Court

---

[2]  Defendants also moved to dismiss plaintiff's original complaint.  Since an amended complaint supersedes the original complaint, the motion to dismiss the original complaint will be denied as moot.  See Snyder v. Pascack Valley Hospital, 303 F.3d 271, 276 (3d Cir. 2002) (stating "[a]n amended complaint

cannot decide this matter if it lacks jurisdiction, defendants'
12(b)(1) motion to dismiss for lack of subject-matter
jurisdiction is decided first.

### A. Standard for 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction

If the subject matter jurisdiction of the Court is
challenged, the plaintiff bears the burden of persuasion.  See
Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr
Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir.
1991).  In addition, "... the district court may not presume the
truthfulness of plaintiff's allegations, but rather must
'evaluat[e] for itself the merits of [the] jurisdictional
claims.'" Id. (citing Mortensen v. First Fed. Sav. & Loan Ass'n,
549 F.2d 884, 891 (3d Cir. 1977)).

### B. Rooker-Feldman Doctrine

Defendants argue that since Hailstalk filed identical claims
with the NJLWD and the case was settled and marked as closed by
the NJLWD that the Court lacks jurisdiction over the claims filed
in this Court based on the Rooker-Feldman doctrine.

The Rooker-Feldman abstention doctrine bars lower federal
courts from exercising jurisdiction over a case that is the
functional equivalent of an appeal from a state court judgment.
Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of

---

supercedes the original version in providing the blueprint for
the future course of a lawsuit.").

Columbia Ct. of Appeals v. Feldman, 460 U.S. 462 (1983); FOCUS v. Allegheny County Ct. of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996); see also Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 291-92 (2005) (explaining that in the Rooker and Feldman cases, plaintiffs in both cases, alleging federal-question jurisdiction, called upon the district court to overturn an injurious state-court judgment, but because § 1257, as long interpreted, vests authority to review a state court's judgment solely in the Supreme Court, the District Courts in Rooker and Feldman lacked subject-matter jurisdiction).

    "A case is the functional equivalent of an appeal from a state court judgment in two instances: (1) when the claim was actually litigated before the state court; or (2) when the claim is inextricably intertwined with the state adjudication."  Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004) (commenting that almost any claim that is actually litigated will also meet the inextricably intertwined test)(citing ITT Corporation v. Intelnet International Corporation, 366 F.3d 205, 210 (3d Cir. 2004)).  "A claim is inextricably intertwined with the state court adjudication when 'federal relief can only be predicated upon a conviction that the state court was wrong.'"  Id. at 150 (citing Parkview Assoc. v. City of Lebanon, 225 F.3d 321, 325 (3d Cir. 2000)).

    The Rooker-Feldman doctrine is not applicable in this case

because the underlying proceeding involved a complaint filed with the NJLWD, a state administrative agency,[3] and did not involve a claim that was litigated in a state court proceeding.  The Rooker-Feldman doctrine "... has no application to judicial review of executive action, including determinations made by a state administrative agency." Verizon Maryland, Inc. v. Public Service Com'n, 535 U.S. 635, 644 n.3 (2002)(affirming that Rooker-Feldman doctrine was not applicable to judicial review of decision made by the Maryland Public Service Commission); National R.R. Passenger Corp. v. Pennsylvania, 342 F.3d 242, 256 (3d Cir. 2003) (stating that "[t]he Supreme Court has made clear...that the Rooker-Feldman doctrine only applies to state judicial proceedings, not administrative or legislative proceedings.") (citing Feldman, 460 U.S. at 476).  Thus, since the underlying proceeding was before an administrative agency, the Rooker-Feldman doctrine does not bar this Court from exercising subject-matter jurisdiction over plaintiff's claims.

**C.  Conversion of Motion to Dismiss**

Although defendants filed their motion as a motion to dismiss, they recognized that if the Court relies on documents attached as exhibits to their motion that are considered outside of the pleadings, and those documents are not susceptible to

---

[3] The NJLWD is listed as department of the State of New Jersey.  See official website for the State of New Jersey, available at http://nj.gov/nj/deptserv.html.

judicial notice, that the motion must be converted to summary
judgment.  See Southern Cross Overseas Agencies, Inc. v. Kwong
Shipping Group Ltd., 181 F.3d 410, 426 (3d Cir. 1999) (stating
that a Rule 12(b)(6) motion must only consider the facts alleged
in the pleadings, the documents attached thereto as exhibits, and
matters of judicial notice).  A court may consider, however, "an
undisputedly authentic document that a defendant attaches as an
exhibit to a motion to dismiss if the plaintiff's claims are
based on the document."  Pension Benefit Guar. Corp. v. White
Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any
other matters outside the pleadings are presented to the Court,
and the Court does not exclude those matters, a Rule 12(b)(6)
motion will be treated as a summary judgment motion pursuant to
Rule 56.  Id.

Here, the defendants attached copies of plaintiff's claim
form filed with the NJLWD, a letter from defendants' counsel, a
letter from the NJLWD, an unsigned settlement agreement, the
amended complaint and a court decision, Toscano v. Connecticut
General Life Ins., No. 05-4833, 2007 WL 542285, at *1 (D.N.J.
Feb. 16, 2007), printed from Westlaw.  Although the Court can
take judicial notice of the amended complaint and court decision
since both are court filings, L-3 Communications Integrated
Systems, L.P. v. U.S., 79 Fed.Cl. 453, 464 n.23 (2007), the
remaining documents are matters outside of the pleadings and not

8

attached to or referred to directly in the complaint.  See
Eisenberg v. Bank of America, No. 07-1361, 2008 WL 2127958, at *2
(M.D.Pa. May 20, 2008)(declining to examine correspondence so as
not convert motion to dismiss into a motion for summary judgment)
(citing Friedman v. Lansdale Parking Auth., 151 F.R.D. 42, 44
(E.D.Pa. 1993) for the proposition that a "court has complete
discretion to determine whether or not to accept any material
beyond the pleadings that is offered in conjunction with a
defendant's Rule 12(b)(6) motion").  Since we take into
consideration the exhibits attached to defendants' motion to
dismiss which are not subject to judicial notice and were not
part of the plaintiff's complaint, the motion to dismiss is
converted to a motion for summary judgment.  Also, because
defendants gave notice in their motion that it consented to
having the motion converted to a motion for summary judgment, all
parties were provided with advance notice of the conversion.  See
Akshayraj, Inc. v. Getty Petroleum Marketing, Inc., No. 06-2002
(NLH), 2007 WL 708852, at *4 (D.N.J. Mar. 6, 2007)(finding that
when the court converts a motion to dismiss into a motion for
summary judgment notice must be provided to the parties)(citing
In re Rockefeller Center Properties, Inc. Securitites Litigation,
184 F.3d 280, 287-88 (3d Cir. 1999), Rose v. Bartle, 871 F.2d
331, 340 (3d Cir.1989)).

D.    **Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits

10

or otherwise, specific facts showing that there is a genuine issue for trial. Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### E.  Claim Preclusion

Defendants move to dismiss Hailstalk's claims on the ground that they are barred by the doctrine of claim preclusion because the same parties settled the same claims in the NJLWD proceeding. In diversity cases such as this, we look to the rules of preclusion applied by the state where the Court sits, which in this jurisdiction is New Jersey.  See id. (citing Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 508 (2001)).  Under New Jersey law, claim preclusion, also referred to as res judicata, applies if the subsequent action involves substantially similar or identical causes of action, issues, parties and relief as were involved in the prior action. Wheeler v. Nieves, 762 F.Supp. 617, 624 (D.N.J. 1991)(citing Culver v. Insurance Co. of North America, 559 A.2d 400 (N.J. 1989)).  New Jersey courts apply the following analysis for res judicata: "(1) the judgment in the prior action must be valid, final, and on the

11

merits; (2) the parties in the later action must be identical to
or in privity with those in the prior action; and (3) the claim
in the later action must grow out of the same transaction or
occurrence as the claim in the earlier one." <u>Sutton v. Sutton</u>, 71
F.Supp.2d 383, 390 (D.N.J. 1999)(citing <u>Watkins v. Resorts Int'l
Hotel and Casino, Inc.</u>, 591 A.2d 592 (N.J. 1991), quoting
<u>Federated Dept. Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398
(1981)).

The parties do not dispute that the parties, claims and
relief involved in this case are the same as those involved in
the administrative action.  The issue is whether there was a
settlement of the prior claim, and if there was, whether
settlement in a NJLWD administrative proceeding can have <u>res
judicata</u> effect in this Court.  Plaintiff states that she never
authorized her attorney to enter into settlement and never signed
any settlement agreement.  Defendants argue that plaintiff is
bound by the agreement entered into by her attorney on her
behalf.  They also argue that the letter written by a NJLWD Wage
Collection Referee stating that the matter was marked as settled
and closed is evidence that the matter was settled at the
administrative level.

An attorney can only enter into a valid settlement agreement
with the consent of her client or if the client specifically
authorized the attorney to settle the case.  <u>Henry v. Lynch</u>, 169

Fed.Appx. 102, 104 (3d Cir. 2006)(stating that "[t]he general rule under New Jersey law is that the consent of the client is necessary to settle the case unless the client specifically authorizes an attorney to settle). See Amatuzzo v. Kozmiuk, 703 A.2d 9, 12 (N.J.Super.A.D. 1997) ("An attorney may settle a lawsuit on behalf of a client if the attorney has either actual authority (express or implied) or apparent authority.") (citing Newark Branch, NAACP v. Township of West Orange, N.J., 786 F.Supp. 408, 423 (D.N.J. 1992); United States Plywood Corp. v. Neidlinger, 194 A.2d 730, 734 (N.J. 1963) (per curiam)). Also, "[n]egotiations of an attorney are not binding on the client unless the client has expressly authorized the settlement or the client's voluntary act has placed the attorney in a situation wherein a person of ordinary prudence would be justified in presuming that the attorney had authority to enter into a settlement, not just negotiations, on behalf of the client." Britt v. Camden Redevelopment Agency, 2008 WL 516328, at *9 (N.J.Super.A.D. Feb. 28, 2008) (citing Amatuzzo, 703 A.2d at 12); see Moussa v. Vozza, 2007 WL 108315, at *2 (N.J.Super.A.D. Jan. 18, 2007)(stating that "...in private litigation, where the client by words or conduct communicated to the adverse attorney, engenders a reasonable belief that the attorney possesses authority to conclude a settlement, the settlement may be enforced. However, the attorney's words or acts alone are

13

insufficient to cloak the attorney with apparent authority.")
(citing Amatuzzo,703 A.2d at 12).

Defendants bear the burden of showing that Hailstalk
consented to the settlement or gave authority to her attorney to
settle her case.  See Henry, 169 Fed.Appx. at 104.  Defendants
have not demonstrated that Hailstalk consented to the agreement.
Although an oral settlement agreement can be enforceable, see
Claridge House One Condominium Ass'n, Inc. v. Beach Plum
Properties, LLC, 2006 WL 290439, at *5 (N.J.Super.A.D. Feb. 08,
2006), there is no evidence that Hailstalk entered into an oral
agreement.  Rather, defendants argue that Hailstalk made
handwritten revisions to the proposed settlement and that
defendants accepted her request to delete the general release
provision and sent back the revised agreement to her attorney for
Hailstalk's signature.  They argue that Hailstalk did not object
to the material terms of the settlement, including the settlement
amount of $8,500.00.  Hailstalk denies that she accepted the
terms as proposed by defendants and argues that she only stated
that she would be amenable to settlement if the defendants
altered their offer.  She specifically states that she rejected
the amount offered by the defendants.

Since we are viewing defendants' motion as a motion for
summary judgment, defendants have the burden of showing that
there is no genuine dispute over material facts.  Here,

14

defendants argue that Hailstalk accepted the settlement and
Hailstalk specifically denies that she did.[4]  Thus, a genuine
dispute of fact exists so that summary judgment is not proper on
the issue of whether Hailstalk consented to the settlement.

Defendants also have not demonstrated that Hailstalk gave
authority to her attorney to enter into a settlement.  Defendants
rely on the fact that Mr. Dragon was her attorney during the
negotiations.  Mere retention of an attorney, however, "... is
insufficient to demonstrate apparent authority to settle."  Id.
(citing Seacoast Realty Co. v. West Long Branch Borough, 14
N.J.Tax 197, 203 (1994)).  Defendants have not presented any
facts or circumstances surrounding the negotiations leading to
the purported settlement to support their argument.  Id. at 105
(finding that the record did not present a clear picture of the

---

[4]  On the version of the settlement and release agreement
alleged to contain Hailstalk's handwritten revisions there is no
revision as to the amount of settlement, $8,500.00.  However, the
revised version of the release attached as defendants' Exhibit E
does not adopt all of the handwritten changes proposed by
Hailstalk, including Hailstalk's revision as to how the money was
to be divided between herself and her lawyer.  This suggests that
defendants did not accept Hailstalk's counter-offer of
settlement, but counter-offered themselves with another version
of the release that plaintiff argues she did not accept. See
North Brunswick Residents Against High Density, 2007 WL 174349,
at *3 (N.J.Super.A.D. Jan. 25, 2007) (stating that a settlement
is governed by the precepts of contract law so that a qualified
or conditional acceptance containing terms and conditions not
found in the original proposal may operate as a counter-offer but
does not constitute an acceptance and does not result in the
formation of a valid contract binding upon the parties).  As
such, defendants have not shown based on the documents, a clear
acceptance of their offer of settlement by plaintiff.

circumstances surrounding the settlement negotiations and the
Court could not evaluate whether Merrill Lynch's reliance was
reasonable) (citing Sears Mortg. Corp. v. Rose, 634 A.2d 74, 80
(N.J. 1993); Bahrle v. Exxon Corp., 652 A.2d 178, 188
(N.J.Super.A.D. 1995); Shadel v. Shell Oil Co., 478 A.2d 1262,
1265 (N.J.Super.L.D. 1984)).

In addition, defendants' reliance on the letter written by
the NJLWD Referee to Hailstalk stating that their file had been
marked settled and closed is also not conclusive evidence that
Hailstalk entered into a settlement.  In Henry, the Third Circuit
noted that plaintiff's counsel had sent a letter to the district
court which read, in pertinent part: "You may recall my
representation of Plaintiff in the above captioned proceedings.
The parties had tentatively consummated a settlement in Your
Honor's presence in April, 2002."  Id.  The Court acknowledged
that although the letter may have reflected plaintiff's
attorney's perception of what occurred at the end of the second
settlement conference, it did not resolve the question whether
the attorney had either express or implied authorization from his
client.  Id.

Likewise, although the letter may reflect the NJLWD
Referee's understanding of the disposition of the case, it is not
evidence of plaintiff's intent to enter settlement.  See id.  In
Margolis v. Clawans, 149 A.2d 257, 260 (N.J.Super.A.D. 1959), the

16

court found that a docket clerk's entry of settlement and
dismissal was not proper where the parties had not officially
entered into settlement and, therefore <u>res judicata</u> or collateral
estoppel did not apply.  In <u>Margolis</u>, after a purported
settlement was reached, a release and check had been sent to the
claimant.  <u>Id.</u> at 258.  After four weeks had passed without the
claimant executing the release, the opposing party stopped
payment on the check.  <u>Id.</u>  The matter, however, had been marked
"settled-dismissed" on the docket of the New Jersey Essex County
district court.  <u>Id.</u>  The appellate court found that the rules
of court required that a stipulation of settlement had to be
reduced to writing and either filed with the court or made part
of an order signed by the court.  <u>Id.</u> at 260.  Since there was no
compliance with either requirement, the court found that the
docket notation was not an official record but rather an attempt
by a third party to reduce to writing his concept of the
settlement agreement.  <u>Id.</u> (finding that the clerk's entry
constituted a ministerial rather than a judicial function).

Here, there is no evidence that a letter written by the
NJLWD Referee stating that the department's file was marked
settled and closed is evidence of Hailstalk's intent to settle
her case.  Indeed, the letter was sent in response to Hailstalk's
inquiries to the NJLWD and stated that if she was dissatisfied
with the outcome to contact another attorney which suggests that

17

Hailstalk expressed some disagreement that the matter was marked as settled and the case closed.

Moreover, even if defendants could show that Hailstalk consented to or authorized settlement, they have not shown that a settlement in a NJLWD proceeding has preclusive effect on district court proceedings.  While settlements generally can have preclusive effect, see, e.g., In re Estate of Gabrellian, 859 A.2d 700, 708 (N.J.Super.A.D. 2004)(finding res judicata principles can apply to settlements), there is authority that claim preclusion or res judicta does not apply to administrative rulings unless the agency has acted in a judicial capacity.  In Astoria Federal Sav. and Loan Ass'n v. Solimino, 501 U.S. 104, 107 (1991), the Supreme Court stated that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." Id. (citing United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422(1966)).  Although the Supreme Court recognized a presumption toward applying res judicata, it cautioned that it may not be suitable to all agency decisions and that application varies according to the "... specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures."  Id. at 110 (citations omitted).

18

Defendants have not presented any facts as to the power or adequacy of the NJLWD procedures, or how the NJLWD acted in a judicial capacity.  Hailstalk has argued that the marking of her file as settled and closed by the NJLWD is not a judicial or quasi-judicial proceeding sufficient to warrant claim preclusion.[5]  See Olivieri v. Y.M.F. Carpet, Inc., 897 A.2d 1003, 1012 (N.J. 2006).  In Olivieri, the court held that an administrative hearing conducted before an unemployment hearing officer did not have preclusive effect on the plaintiff's subsequent court proceeding.  Id.  Importantly, the court found that since an administrative unemployment hearing is not bound by the rules of evidence and specifically permits hearsay evidence, and that a copy of the transcript of the administrative proceedings was not provided to the court, the trial judge could not determine whether the issues were "fully and fairly litigated." Id.

Thus, there is insufficient evidence before the Court regarding the proceedings conducted by the NJLWD in order to make

---

[5]  Although the procedure for appealing a decision of the Division of Wage and Hour Compliance of the NJLWD appears to be that the claim is first heard by the Office of Administrative Law, then appealed to the Commissioner, then appealed to the Appellate Division of the New Jersey Superior Court, see New Jersey Dept. of Labor v. Pepsi-Cola, 2002 WL 187400, at *1-4 (N.J.Super.A.D. Jan. 31, 2002), that process was not followed in this case.  Rather, the letter from the NJLWD states since the matter was settled that neither party is permitted to appeal the decision.

a determination whether the NJLWD acted in a judicial capacity or whether the parties had an adequate opportunity to litigate their claims so that alleged settlement of Hailstalk's claims would have preclusive effect in this Court.  See Astoria, 501 U.S. at 107.  Therefore, the record does not support a conclusion at this stage of the proceedings that Hailstalk entered into a settlement of her wage claims with defendants, and even if she did enter into a settlement, defendants have not shown that the settlement of NJLWD proceedings would have preclusive effect on the proceedings in this Court.  Thus, defendants' converted motion for summary judgment to dismiss plaintiff's claim as barred under the doctrine of claim preclusion is denied.[6]

---

[6]  Since we conclude that a dispute of fact exists over whether there was a settlement, we do not reach the merits of plaintiff's defense raised in her opposition that she could not settle her claims under the FLSA without approval from the Secretary of the Department of Labor or without court supervision.

In addition, we do not reach the issue of whether plaintiff's claims are barred under the affirmative defense of failure to exhaust administrative remedies.  If, as plaintiff argues, there was no settlement, then arguably the case could proceed through administrative channels.  Although failure to exhaust is generally an affirmative defense to be pleaded by the defendant, if a statute provides that a plaintiff must exhaust administrative remedies first, the court can dismiss a claim sua sponte.  See Pena-Ruiz v. Solorzano, No. 08-1747, 2008 WL 2351021, at *2 n. 3 (3d Cir. June 10, 2008) (finding that although failure to exhaust administrative remedies is generally an affirmative defense, a district court has the power to dismiss sua sponte a facially deficient complaint that alleges violations of the Prison Litigation Reform Act ("PLRA") but does not state that the prisoner pursued, as required by the PLRA, all avenues of relief available within the prison's grievance system before bringing a

**F.    Motion to Strike Plaintiff's Sur-Reply**

Defendants also move to have Hailstalk's sur-reply stricken because she failed to comply with Local Rule 7.1(d)(6) which requires the permission of the Judge or Magistrate Judge before filing a sur-reply.  Hailstalk has not filed an opposition to this motion.

Local Rule 7.1(d)(6) clearly states that sur-replies are not allowed except upon permission of the Judge.  Hailstalk did not request permission to file a sur-reply and, therefore, defendants' unopposed motion to strike is granted and Hailstalk's sur-reply is stricken.  See Floyd v. New Jersey Casino Com'n, No. 05-3949 (RMB), 2007 WL 1797656, at *1 (D.N.J. June 19, 2007)(disregarding plaintiff's impermissible sur-reply which was filed without the Court's permission); O'Brien v. State of N.J., No. 05-3809 (GEB), 2006 WL 891174, at *1 n.1 (D.N.J. Apr. 05,

---

federal civil rights action).  We are unaware of any statute requiring plaintiff to plead in her complaint that she has exhausted all administrative remedies before the NJLWD before filing her complaint and, therefore, do not dismiss the complaint sua sponte on that ground.  We are also unaware of any statute providing for an "election of remedies" provision for wage and hour claims before the NJLWD similar to that included in the New Jersey Law Against Discrimination statue, N.J.S.A § 10:5-27, which bars individuals from bringing a judicial action while an agency investigation on the same claim is pending or after the agency has rendered a final determination.  See Chugh v. Western Inventory Services, Inc., 333 F.Supp.2d 285, 290 (D.N.J. 2004) (stating that election of remedies provision seeks to prevent parties from having "a second bite of the apple" and to prevent duplication of efforts and forum shopping).

2006)(striking plaintiff's sur-reply that was filed without prior
Court approval as impermissible under L.Civ.R. 7.1(d)(6)), <u>aff'd</u>
<u>O'Brien v. New Jersey</u>, 230 Fed.Appx. 124 (3d Cir. 2007).

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, defendants' motion to dismiss, as
converted to a motion for summary judgment, is denied.
Defendants' motion to strike plaintiff's sur-reply is granted.


     s/Noel L. Hillman
     NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey